UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Sybil Smith Warren,<br><br>                              Debtor. | Case No. 11-06879-dd<br><br>Adv. Pro. No. 12-80002-dd<br><br>Chapter 7 |
| Discover Bank, Issuer of the<br>Discover Card,<br><br>                              Plaintiff,<br><br>v.<br><br>Sybil Smith Warren,<br><br>                              Defendant. | **ORDER** |

This matter is before the Court on an application for attorney fees and costs filed by the defendant, Sybil Smith Warren ("Defendant") on December 5, 2013. On November 26, 2013, the Court entered an Order finding the debt Defendant owes to the plaintiff, Discover Bank, Issuer of the Discover Card ("Plaintiff"), dischargeable and finding Defendant entitled to her reasonable attorney fees and costs under 11 U.S.C. § 523(d). The Court withheld entering a judgment pending a ruling on the amount of fees and costs. Plaintiff objected to Defendant's application, arguing that the fees and costs sought were not reasonable and that Defendant was not entitled to her fees and costs under section 523(d). Consequently, the Court entered an Order on January 27, 2014, construing Plaintiff's objection, in part, as a motion to reconsider and giving Defendant ten days to respond. Defendant responded and submitted a supplemental application for the fees and costs incurred in responding. Plaintiff objected to the supplemental application. After careful consideration of the applicable law and arguments of counsel, the

1

Court rules as follows with respect to Defendant's application and supplemental application and Plaintiff's motion to reconsider.

I.  **Plaintiff's Motion to Reconsider**

    *A.  Legal Standard*

Because no judgment had been entered at the time Plaintiff filed its motion to reconsider and because the Court had not yet determined the amount of fees to which Defendant was entitled, the Court finds that the applicable standard is Federal Rule of Civil Procedure 54(b), made applicable by Federal Rule of Bankruptcy Procedure 7054(a). Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). "This is because a district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Id*. at 514-15; *see also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991). Said power is committed to the discretion of this Court, and "doctrines such as law of the case . . . have evolved as a means of guiding that discretion." *Id.* at 515.

    *B.  Analysis*

The Court's conclusion in the November 26, 2013 Order that Defendant was entitled to her fees and costs under section 523(d) was based on a lack of evidence regarding actual

2

reliance, lack of evidence regarding justifiable reliance, and the absence of substantial justification at the time the initial complaint was filed.[1] Although Plaintiff asserts the Court erred by not basing its decision on the entire record, in determining whether a fee award was appropriate, the Court examined the "case as an inclusive whole, rather than as atomized line-items." *Comm'r, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 161-62 (1990); *see also Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 138 (4th Cir. 1993) ("Moreover, it is clear that Congress intended to address governmental misconduct whether that conduct preceded litigation, compelling a private party to take legal action, or occurred in the context of an ongoing case through prosecution or defense of unreasonable positions.").[2] The Court will examine in turn Plaintiff's arguments with respect to each basis for the Court's decision.

    1.    Actual reliance

"The recipient of a fraudulent misrepresentation can recover from the maker for his pecuniary loss only if he in fact relies upon the misrepresentation in acting or in refraining from action, and his reliance is a substantial factor in bringing about the loss." Restatement (Second) of Torts § 537 cmt. a. The Court concluded in the November 26th Order that there was no evidence of actual reliance introduced at trial. Defendant appears to concede in her response to

---

[1] Contrary to Plaintiff's assertion, the Court did not "criticize" it for failing to engage in pre-complaint discovery. While the Court included in its findings of fact that Plaintiff did not conduct a Federal Rule of Bankruptcy Procedure 2004 examination or attend the 11 U.S.C. § 341 meeting of creditors, these facts were not a significant part of the Court's analysis on the section 523(d) issue. Mentioning these facts would seem to be appropriate considering Defendant emphasized them at trial.

[2] "Section 523(d) was patterned after the Equal Access to Justice Act ['EAJA'], 28 U.S.C. § 2412(d)(1)(A), a provision governing attorney's fees claimed by litigants against the federal government." *Bridgewater Credit Union v. McCarthy* (*In re McCarthy*), 243 B.R. 203, 207 (B.A.P. 1st Cir. 2000); *see also In re Hingson*, 954 F.2d 428, 429 (7th Cir. 1992); *Citizens Nat'l Bank v. Burns* (*In re Burns*), 894 F.2d 361, 363 n.2 (10th Cir 1990); *AT&T Universal Card Serv. Corp. v. Williams* (*In re Williams*), 224 B.R. 523, 529 (B.A.P. 2d Cir. 1998); *In re Malone*, No. 10-02470-HB, 2011 WL 3800121, at *4 (Bankr. D.S.C. Aug. 29, 2011). Consequently, cases interpreting and applying the EAJA are instructive in applying section 523(d).

Plaintiff's motion to reconsider that there were damages in the form of an extension of credit. Docket entry 79, pp. 9-10. Defendant is correct that damages and actual reliance are two different elements. However, they are interrelated because a creditor's reliance is typically its extension of credit. Given this concession regarding damages as well as the ambiguous wording of some of the stipulated facts in the joint pretrial order (docket entry 64, pp. 1-2), the Court finds that a lack of evidence regarding actual reliance is not a basis for awarding fees and costs under section 523(d).[3]

### 2.   Justifiable reliance

To prevail in its dischargeability action, Plaintiff needed not only to prove that its reliance was actual but also justifiable. *Field v. Mans*, 516 U.S. 59, 70 (1995). Justifiable reliance clearly was listed as a disputed fact in the parties' joint pretrial order. Docket entry 64, p. 3. Justifiable reliance "requires more than actual reliance but less than reasonable reliance." *Boyuka v. White* (*In re White*), 128 Fed. Appx. 994, 999 (4th Cir. 2005). The alleged misrepresentation in this case was a promise to repay certain charges Defendant made using her credit card. In the context of a statement of intention, "[t]he recipient of a fraudulent misrepresentation of intention is justified in relying upon it if the existence of the intention is material and the recipient has reason to believe that it will be carried out." Restatement (Second) of Torts § 544. Stated otherwise, "[i]n order for reliance upon a statement of intention to be justifiable, the recipient of the statement must be justified in his expectation that the intention

---

[3] Plaintiff argues in its motion to reconsider that "[c]ourts have found reliance exists when use of the card by the debtor forces the credit card issuer to honor its guarantee of payment to the merchant." *Sears, Roebuck & Co. v. McVicker* (*In re McVicker*), 234 B.R. 732, 740 (Bankr. E.D. Ark. 1999). However, this is the exact evidence that was lacking at trial, as there was no evidence of Plaintiff being forced to honor a guarantee of payment to the merchants with whom Defendant conducted transactions using her Discover card. Again, given the ambiguity in the stipulated facts and Defendant's concession, the lack of evidence regarding actual reliance is not a basis for the Court awarding fees and costs.

will be carried out. If he knows facts that will make it impossible for the maker to do so, he cannot be justified in his reliance." *Id.*, § 544, cmt. c. To constitute justifiable reliance, a plaintiff's conduct does not have to "'conform to the standard of the reasonable man[, as] [j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases.'" *Field*, 516 U.S. at 70-71 (quoting Restatement (Second) of Torts § 545A cmt. b). Furthermore, "a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Id*. at 70 (quoting Restatement (Second) of Torts § 540). "Justifiability is not without some limits," as "a person is 'required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Id*. at 71 (quoting Restatement (Second) of Torts § 541, cmt. a).

Plaintiff's evidence regarding justifiable reliance at trial included Defendant's credit card application introduced into evidence without any testimony as to whether Plaintiff reviewed it or as to the analysis that went into Plaintiff's decision to issue Defendant a line of credit, the account statements from the last year of a line of credit that was in place for nine years without any testimony from Plaintiff regarding the significance of what is reflected in those statements on its decision to continue providing access to the line of credit, and asking Defendant whether she ever gave Plaintiff any reason to believe she would not pay for the charges incurred to which Defendant responded "no."[4] No representative of Plaintiff testified under oath at trial regarding

---

[4] In its motion to reconsider, Plaintiff states that Defendant always made the minimum payment on her Discover account and cites Defendant's deposition in support of this statement. Defendant was not asked at trial whether she always made the minimum payment, and asking a

5

what gave Plaintiff reason to believe Defendant would keep her promise to repay the charges she made. Restatement (Second) of Torts § 544. With the evidence before it, the Court was unable to find that Plaintiff was justified in relying on Defendant's promise to pay and not "blindly rel[ying] upon a misrepresentation the falsity of which would be patent to [it] if [it] had utilized [its] opportunity to make a cursory examination or investigation." Restatement (Second) of Torts § 541, cmt. a; *see Holmes v. Nat'l City Bank* (*In re Holmes*), 414 B.R. 115, 123-26 (E.D. Mich. 2009) (discussing evidence of the analysis that went into a creditor's decision to extend a loan); *AT&T Universal Card Serv. Corp. v. Searle*, 223 B.R. 384, 387, 392 (D. Mass. 1998) (discussing evidence of the analysis that went into a creditor's decision to extend and continue extending credit); *FCC Nat'l Bank v. Willis* (*In re Willis*), 200 B.R. 868, 869 (W.D. Mo. 1996) (affirming bankruptcy court's finding that the plaintiff failed to prove justifiable reliance because it "offered no evidence to show what facts were available to it when [the defendant] began to extensively use its credit card"); *Columbo Bank, FSB v. Sharp* (*In re Sharp*), Nos. 02-21829 NVA, 02-19020 NVA, 2007 WL 2898704, at *4-*5 (Bankr. D. Md. Sept. 28, 2007) ("Where, however, the lender is sophisticated, the sums involved are significant, there is no history upon which the lender can rely and the only information that the lender has comes from the borrower, the lender cannot later be heard to complain that it was duped."); *Compass Bank v. Meyer* (*In re Meyer*), 296 B.R. 849, 861-63 (Bankr. N.D. Ala. 2003) (discussing justifiable reliance in the credit card context); *AT&T v. Herrig* (*In re Herrig*), 217 B.R. 891, 894, 899-900 (Bankr. N.D. Okla. 1998) (discussing the evidence a credit card company presented to prove justifiable reliance); *MBNA Am. v. Simos* (*In re Simos*), 209 B.R. 188, 193-94 (Bankr. M.D.N.C. 1997)

---

person a question at a deposition is not a substitute for asking that question at trial in the Court's presence. Moreover, the deposition testimony to which Plaintiff cites does not impact the Court's finding that Plaintiff's position was not substantially justified, in part based on the lack of evidence presented at trial regarding justifiable reliance.

6

("Without some evidence regarding the information which was known to the plaintiff at the time that the credit card was issued and at the time the charges were made, there is no basis for this court to find that there was justifiable reliance on the part of the plaintiff."); *AT&T Universal Card Serv. Corp. v. Akdogan* (*In re Akdogan*), 204 B.R. 90, 97 (Bankr. E.D.N.Y. 1997) ("To establish justifiable reliance on the Debtor's implied (alleged) misrepresentation that he intended to repay the charges at issue here, at the very least AT & T must demonstrate that it conducted a credit check of the Debtor or that circumstances otherwise exist which demonstrate credit was not extended blindly."); *Sears, Roebuck & Co. v. Hernandez* (*In re Hernandez*), 208 B.R. 872, 877 (Bankr. N.D. Tex. 1997) ("The evidence presented at the trial in this case proves that the debtor filled out some kind of credit application; that this information was forwarded to Sears' central credit application bureau; and, that a card was issued to the debtor. From this, we cannot determine whether any of the application information was even looked at, let alone relied on, by Sears personnel."); *AT&T Universal Card Serv. Corp. v. Feld* (*In re Feld*), 203 B.R. 360, 371 (Bankr. E.D. Pa. 1996) (concluding "reliance will be justifiable if the creditor utilized its opportunity to make a cursory investigation prior to the extension of the open ended credit account which supports the credit line granted and no 'red flags' subsequently are raised"); *AT&T Universal Card Serv. Corp. v. Richards* (*In re Richards*), 196 B.R. 481, 482 (Bankr. E.D. Ark. 1996) (finding credit card company failed to prove justifiable reliance where it called the debtor as its only witness); (*Chevy Chase, F.S.B. v. Pressgrove* (*In re Pressgrove*), 147 B.R. 244, 247 (Bankr. D. Kan. 1992) (applying a reasonable reliance standard in finding that a credit card company failed to meet its burden of proof). The Court cited the lack of evidence regarding justifiable reliance as a basis for finding that Plaintiff's position was not substantially justified. *See Am. Express Travel Related Serv. Co. v. Christensen* (*In re Christensen*), 193 B.R. 863, 867

(N.D. Ill. 1996) (awarding costs to a *pro se* defendant where the creditor's case was tenuous and it failed to introduce evidence regarding all of the elements of its claim).

Plaintiff asserts, in its motion to reconsider, that the Court applied a new evidentiary burden not previously enforced in the Fourth Circuit by requiring it to testify regarding its reliance and whether it was justified. However, the Court neither announced a new evidentiary standard nor stated that a representative from Plaintiff had to testify but rather concluded that Plaintiff had not met its burden of proof with respect to justifiable reliance, that Plaintiff could have perhaps met its burden by testifying on its own behalf at trial, and that the lack of evidence was such that Plaintiff's position was not substantially justified. The Court also noted some of the issues for which evidence was not provided and that Plaintiff seemed to want the Court to presume the existence of certain facts. In its motion to reconsider, Plaintiff again seems to want the Court to presume certain facts, including that Plaintiff issued Defendant a credit card based on her application, that Plaintiff knew Defendant continued to make regular payments on her credit card account up to the petition date, and that Plaintiff relied on Defendant's payment record in continuing to extend credit. Docket entry 75, pp. 9, 13, 15. However, there was no evidence at trial regarding whether Plaintiff reviewed Defendant's credit card application or the analysis that went into Plaintiff's decision to issue Defendant a line of credit. Similarly, neither witness who testified at trial was an employee or representative of Plaintiff familiar with its business practices, and thus it is not clear how either witness was capable of testifying as to what Plaintiff knew or relied on.

Plaintiff also argues its position was substantially justified because the presumption set forth in 11 U.S.C. 523(a)(2)(C) applied in this case and cites *First Card v. Carolan* (*In re Carolan*), 204 B.R. 980 (B.A.P. 9th Cir. 1996) and *Chase Bank U.S.A., N.A. v. Ritter* (*In re*

8

*Ritter*), 404 B.R. 811 (Bankr. E.D. Pa. 2009) in support. *Ritter* is a bankruptcy court decision from another circuit. Similarly, *Carolan* is an appellate decision from another circuit, and while the *Carolan* court stated that a number of the charges at issue were for what could be construed as luxury items, it also noted that there was no evidence of reliance at trial. In its November 26th Order, this Court applied the section 523(a)(2)(C) presumption in a manner consistent with how Plaintiff argued the presumption should be applied in its pretrial brief, namely as a presumption which shifts the burden of producing evidence but not the burden of persuasion. Furthermore, the Court's treatment of the presumption as extending to the issue of whether Defendant intended to keep her promise to pay the charges at issue but not the other elements of section 523(a)(2)(A) was consistent with the case law Plaintiff cited on the presumption in its pretrial brief.[5] *See* docket entry 65, pp. 18-19 (citing *FIA Card Serv., N.A. v. Wagner* (*In re Wagner*), Bankruptcy No. 10-36900, Adversary No. 11-3020, 2012 WL 1605945, at *2 (Bankr. N.D. Ohio May 8, 2012) ("The burden is then on the debtor to produce some evidence to rebut the presumption, that is, to demonstrate that the debt was not incurred in contemplation of discharge in bankruptcy and thus a fraudulent debt."); *Sears, Roebuck and Co. v. Green*, 296 B.R. 173, 179 (Bankr. C.D. Ill. 2003) (concluding the 523(a)(2)(C) presumption "can be overcome by evidence that the debtor experienced a sudden change in circumstances or that the debtor did not contemplate filing a bankruptcy petition until after the transaction took place."); *GE Money Bank v. LaBovick* (*In re LaBovick*), 355 B.R. 508, 515 (Bankr. W.D. Pa. 2006) ("If some portion of GE Money Bank's claim is ultimately presumed to be nondischargeable pursuant to § 523(a)(2)(C), said presumption can nevertheless be rebutted by the Debtor if he sufficiently demonstrates that such

---

[5] Even if the presumption extended to all of the elements of section 523(a)(2)(A), the debt at issue would still be dischargeable because the presumption was rebutted and Plaintiff's burden of proof was not met on whether Defendant intended to keep her promise to repay the charges. For the debt to be nondischargeable, all of the elements of section 523(a)(2)(A) must be proven.

9

portion of such claim was not incurred in contemplation of his discharge in bankruptcy."). Plaintiff has not argued that the Court erred in its application of section 523(a)(2)(C). Consequently, the Court declines to create a per se rule whereby a creditor who relies on an evidentiary presumption as to only one element of a cause of action for which that creditor bears the burden of persuasion as to all elements is substantially justified for purposes of section 523(d).

Likewise, the Court declines to adopt a similar per se rule advanced by Plaintiff whereby a creditor is considered to be substantially justified if it proves one significant element of its claim. It is not clear how a creditor that, for example, offers an abundance of evidence for one element for which it has the burden of proof but no evidence as to other elements it must prove should be considered substantially justified.

Finally, Plaintiff argues that Defendant made a motion for judgment on partial findings under Federal Rule of Civil Procedure 52(c), made applicable by Federal Rule of Bankruptcy Procedure 7052, and that in its ruling on the motion, the Court found justifiable reliance established. Defendant made her motion after Plaintiff presented its case but before Defendant presented her case. Rule 52(c) allows a court to enter judgment against a party on a claim after that party has been fully heard on an issue. Plaintiff cites no authority for the proposition that a court can enter judgment on partial findings under Rule 52(c) in favor of a party on an issue after that party has presented its case but not the opposing party. Therefore, this argument is not a basis for the Court to alter its November 26th Order.

      3.    Initial complaint

The third basis for finding Defendant entitled to an award of fees and costs under section 523(d) was that Plaintiff's position was not substantially justified at the time it filed the initial

complaint. The only factual basis set forth in the initial complaint for seeking a determination Plaintiff was owed a nondischargeable debt because of fraud was that "Defendant incurred charges and cash advances on [her] account totaling $7,343.18" as of the date she filed bankruptcy and that "between 08/12/2011 and 10/06/2011 Defendant accumulated $4,874.00 in retail charges." Docket entry 1. The complaint then contains what appears to be a vague reference to the presumption under section 523(a)(2)(C) by stating that "$4,874.00 of these transactions were made within the presumption period." The remainder of the complaint is boilerplate, conclusory allegations. The complaint does not allege "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The complaint contains no reference to Jos. A. Bank, J. Peterman, or Anderson Brothers Bank. It also contains no details regarding whether the $4,874.00 in charges allegedly incurred between August 12, 2011, and October 6, 2011, were a departure from Defendant's normal charging habits such that she may have been "loading up" in contemplation of filing bankruptcy. Similarly, it contains no allegations regarding when Defendant first spoke with an attorney about filing bankruptcy.

In its motion to reconsider, Plaintiff argues the Court erred in not considering that Plaintiff had access to the information contained in Defendant's bankruptcy schedules and her Discover card account statements at the time this adversary proceeding was filed. However, the Court is not sure why it should consider whether the position in the initial complaint was justified in light of the information contained in the schedules and account statements when the initial complaint gives no indication it was based on the information contained in those documents.[6] Aside from a conclusory allegation that Defendant did not have the ability to repay

---

[6] The information contained in the initial complaint actually suggests the account statements and bankruptcy schedules were not reviewed prior to Plaintiff filing this case. If Plaintiff had reviewed the account statements showing charges at Jos. A. Bank, J. Peterman, and

11

the charges she was incurring, a fact seemingly true of any debtor seeking to discharge debt in a bankruptcy, the initial complaint does not even allege that Defendant's expenses exceeded her income. Consequently, the Court finds that no error occurred in this regard, considering the initial complaint appears to have only been based on the total debt owed to Plaintiff and the amount of charges within ninety days of Defendant's bankruptcy filing.[7]

Plaintiff also argues the initial complaint should not have been considered at all because the amended complaint rendered it a "nullity." However, the two cases Plaintiff cites in support of this position are not on point, as neither deal with the question of whether to award attorney fees to a prevailing party because the opposing party's position was not substantially justified. In addition, Plaintiff's position is inconsistent with Fourth Circuit precedent applying the EAJA. Specifically, the Fourth Circuit has stated:

> In short, we adopt the view that an unreasonable prelitigation position will generally lead to an award of attorney's fees under the EAJA. If the government's position changes, the court must independently determine whether its prelitigation and litigation positions were reasonable. If the government's prelitigation position is unreasonable and its litigation position reasonable, the government must then prove that the unreasonable position did not "force" the litigation or substantially alter the course of the litigation

*United States v. 515 Granby, LLC*, 736 F.3d 309, 317 (4th Cir. 2013). The legislative history of the amendments to the EAJA in 1985 "specifically notes that the EAJA was designed to prevent

---

a bank not listed as a creditor on Defendant's schedules, the Court can conceive of no reason why Plaintiff would not have included allegations regarding these charges in the complaint.

[7] Plaintiff's counsel concedes that Plaintiff itself was not involved in the decision regarding whether to file this adversary proceeding, as it states in its motion to reconsider/objection to Defendant's fee application that "Discover has delegated to its national counsel . . . the decision about when to bring a case under § 523(a)(2), how to plead, how to prosecute, when to attempt settlement and when to try them." Docket entry 75, p. 26. Therefore, the only person who would have done an investigation prior to filing this adversary proceeding is Plaintiff's counsel at the time the initial complaint was filed. Additionally, this was not a typical attorney-client relationship considering the named plaintiff apparently was not involved in the decision-making process in this adversary proceeding at all.

the government from unjustifiably forcing litigation, then avoiding liability by acting reasonably during the litigation." *Id.* at 316. Plaintiff has not advanced an argument as to why the same should not be true of section 523(d). This Court has found that Plaintiff's position in its initial complaint was unreasonable. Even if the Court were to find Plaintiff's litigation position reasonable, it is hard to conceive of an act that forces litigation more than filing a complaint. *See also Roanoke River Basin Ass'n*, 991 F.2d at 139 ("Whether the government's 'position in the litigation' is substantially justified . . . focuses . . . on the reasonableness of its position in bringing about or continuing the litigation."); *Thompson v. Sullivan*, 980 F.2d 280, 281-82 (4th Cir. 1992) (holding that where the government's unjustified prelitigation position forces a lawsuit, "the government is liable for fees for the whole suit, notwithstanding that it asserts justifiable positions on the various subsidiary disputes that may arise during litigation"). As a result, even assuming that the lack of evidence regarding justifiable reliance was not such as to render Plaintiff's position without substantial justification, Defendant would still be entitled to her costs and fees because the Plaintiff's position at the time it filed the initial complaint was not substantially justified.

## II. Fee Applications

Defendant seeks a total of $56,500.00 in fees and $232.67 in costs in the fee application filed December 5, 2013.[8] Defendant requests an additional $6,532.50 in fees related to responding to Plaintiff's motion to reconsider in the supplemental fee application filed February 6, 2014. Defendant, thus, seeks a total of $63,032.50 in fees and $232.67 in costs.

---

[8] Defendant's costs in the December 5, 2013 fee application actually total $351.67. However, in calculating the total of $56,732.67 in fees and costs Defendant's counsel requests in the application, it appears he did not include a $119.00 cost incurred in May of 2013. Given that Defendant is not seeking reimbursement of this $119.00, the Court will not include this amount in the total awarded.

13

There are no Fourth Circuit decisions on the appropriate standard to apply in considering the reasonableness of fees requested under section 523(d). Consequently, the Court will use the standard applied for determining a reasonable fee under the EAJA. As the fee applicant, Defendant "'bears the burden of establishing entitlement to an award and documenting the appropriate hours expended.'" *Hyatt v. Barnhart*, 315 F.3d 239, 253 (4th Cir. 2002) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). This Court "is accorded 'substantial discretion in fixing the amount of an . . . award,' . . . but is charged with the duty to ensure that the final award is reasonable." *Id.* (quoting *Jean*, 496 U.S. at 163). Moreover, "[o]nce the threshold substantial-justification determination is made, a sizeable award of attorney's fees and expenses is not automatic." *515 Granby*, 736 F.3d at 318.

Among Plaintiff's arguments in opposition to the fees requested is that Defendant should not receive an award of fees for unsuccessfully defending Plaintiff's appeal of this Court's dismissal of the amended complaint. Courts are divided on the issue of whether bankruptcy courts have authority under section 523(d) to award attorney fees incurred on appeal. *Compare Vasseli v. Wells Fargo Bank, N.A.* (*In re Vasseli*), 5 F.3d 351, 354 (9th Cir. 1993) ("Section 523(d) does not give a bankruptcy court the power to award attorney's fees incurred on appeal."), *with Morrissey v. Wiencek* (*In re Wiencek*), 58 B.R. 485, 488 (Bankr. E.D. Va. 1986) ("[T]he policy of the Bankruptcy Code demands that this Court read section 523(d) as mandating an award of fees for appellate representation."). However, the Court need not resolve this issue here because Defendant was unsuccessful in defending the appeal and is thus not entitled to her fees and costs incurred on appeal.[9]

---

[9] The answer to the question of whether a bankruptcy court is authorized to award appellate fees may lie in the language of section 523(d), which states "the court shall grant *judgment* in favor of the debtor for the costs of, and a reasonable attorney's fee for, the

14

Eliminating the fees for unsuccessfully defending the appeal results in Defendant's fees being reduced by $11,570 and costs being reduced by $183.28. This leaves the question of the reasonableness of the remaining $51,462.50 in fees requested. After carefully reviewing the record, the Court finds the number of hours for which Defendant seeks an award of fees to lie outside the realm of reasonableness. The issues in this case were not particularly novel or complicated. Nor is there any indication that discovery was complex or burdensome. Additionally, there appears to have been only one deposition. Aside from the two motions to dismiss, there was one motion to compel filed by Defendant that was resolved via consent order. There were no motions for summary judgment, and the trial lasted less than three hours. As a result, the Court finds $25,000 to be a reasonable fee amount and $49.39 a reasonable amount of costs.

---

proceeding," and the interplay of Rule 54(b) with 28 U.S.C. § 158(a)(1). Emphasis added. Under Rule 54(b), any order or decision, however designated, entered "before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities" is interlocutory in nature and can be revised at any time. Section 158(a)(1) states that district courts "shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees." Given that under Rule 54(b) no order is final until the entry of a judgment adjudicating all claims and that under section 523(d) the award of fees and costs should be part of the bankruptcy court's judgment, the award already will have been made prior to appellate jurisdiction arising, unless there is an interlocutory appeal under section 158(a)(3). Of course, an appellate court could remand an adversary proceeding to a bankruptcy court for an initial determination regarding fees for pursuing or defending an appeal.

Unlike section 523(d), the EAJA sets forth a procedure and time frame for requesting fees and costs. *See* 28 U.S.C. § 2412(d)(1)(B) ("A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses . . . ."). The circuit courts of appeal that have considered the issue have reached different conclusions regarding what court should make the initial determination under the EAJA with respect to an award of fees and costs incurred on appeal. *Compare Garcia v. Schweiker*, 829 F.2d 396, 398 (3d Cir. 1987) (holding determination of fees for appellate work should be done by the district court in the first instance), *with Orn v. Astrue*, 511 F.3d 1217, 1220 (9th Cir. 2008) ("Taken as a whole, our rules recognize the propriety of this court considering a request for EAJA attorney's fees and costs in the first instance."); *McCarthy v. Bowen*, 824 F.2d 182, 183 (2d Cir. 1987) ("An application for appellate fees under EAJA should therefore always be presented to the court of appeals.").

Plaintiff requests that if fees and costs are awarded, they be awarded against Plaintiff's national counsel, Weinstein, Pinson & Riley, P.S., and not Plaintiff. In support of this argument, Plaintiff's counsel asserts "Discover has delegated to its national counsel . . . the decision about when to bring a case under § 523(a)(2), how to plead, how to prosecute, when to attempt settlement and when to try them." Docket entry 75, p. 26. However, regardless of Discover's role or lack thereof in this adversary proceeding, no authority is cited as a basis for judgment for fees and costs being entered against a creditor's counsel rather than the creditor. Consequently, this request is denied. If Weinstein, Pinson & Riley wishes to pay the fees and costs awarded in place of its client or indemnify its client, nothing in this Order prevents it from doing so. The award is, under the statute, against the creditor.

## **CONCLUSION**

For the reasons set forth herein, Plaintiff's motion to reconsider is denied, and Defendant's application and supplemental application for fees and costs is granted in the amount of $25,000.00 in fees and $49.39 in costs.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**03/21/2014**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 03/21/2014

16